FREDERICKA HOMBERG WICKER, Judge.
| ?Defendant/Appellant, Teddy M. Huntley, appeals his conviction of possession with intent to distribute marijuana, a violation of La.R.S. 40:966(A), and his enhanced 30-year hard labor sentence. Mr. Huntley assigns as errors insufficient evidence to convict him and the trial court’s denial of his motion to suppress evidence. For the reasons that follow, we find no merit to the assignments and affirm the conviction and sentence.

Procedural History

Mr. Huntley was charged by bill of information with possession with intent to distribute marijuana. He filed various pretrial motions, including a motion to suppress the evidence. The trial judge denied the motion and the defendant was tried by a 12-person jury which found the defendant guilty as charged. Mr. Huntley filed a motion in arrest of judgment or alternatively for new trial. He asserted that there was insufficient evidence to convict him of the charged offense. The trial judge denied the motion. Approximately one month later, the trial judge |ssentenced Mr. Huntley to 20 years at hard labor. Mr. Huntley thereafter filed a timely motion for appeal which the trial court granted. Shortly thereafter, on November 25, 2009, the state filed a habitual offender bill of information alleging that Mr. Huntley was a third felony offender. The trial judge heard and denied Mr. Huntley’s motion to reconsider sentence.[1] Also, Mr. Huntley was arraigned on the habitual offender bill and Mr. Huntley denied the allegations. A few months later, the trial court conducted a habitual offender hearing. The state withdrew the allegation as to the other predicate. The trial court found Mr. Huntley to be a second felony offender. The court thereafter vacated Mr. Huntley’s original sentence and *647 imposed an enhanced sentence of 30 years at hard labor, without benefit of probation or suspension of sentence. Mr. Huntley timely orally re-urged his motion for appeal.[2] Mr. Huntley thereafter filed a motion to reconsider the sentence, which was denied.

The Trial

On May 19, 2009, Detective Justin Brown arrested Mr. Huntley for possession with intent to distribute marijuana. He based the charge on the packaging of the marijuana, and the fact that Mr. Huntley did not possess any paraphernalia that would indicate personal use. At the time, Mr. Huntley had in his possession one plastic bag containing 10 smaller bags of marijuana. Raven Barrios, an expert in the field of forensic science, testified that she tested the green vegetable matter from four of the 10 small baggies, and that the tests were positive for marijuana. She further testified that the gross weight of the evidence was 14.81 grams.
14Lieutenant Daniel Jewell, a nine-year veteran with the Jefferson Parish Sheriffs Office and a seven-and-one-half year veteran with the narcotics section, testified as an expert in the use, packaging, distribution, and value of narcotics in the Jefferson Parish area. He stated that he participated in about 240 hours of specialized narcotics training. Lieutenant Jewell testified he took part in thousands of narcotics arrests.
Lieutenant Jewell stated that the three main factors that distinguish possession of narcotics from possession with intent to distribute are the value of the drugs, the packaging, and the quantity. Secondary evidence of distribution in narcotics investigations includes digital scales, paperwork, and packaging materials. Paraphernalia commonly found on a person who uses marijuana includes rolling papers, hollowed out cigars, and pipes.
In the instant ease, the lieutenant stated, the fact that the marijuana was packaged in 10 individual baggies was indicative of intent to distribute. The bags would sell for about $10.00 each on the street, bringing in a total of $100.00 to $120.00. Lieutenant Jewell explained that it would not be rational for a heavy user to buy this much marijuana packaged as it was in this case. To buy this much marijuana at retail prices is more expensive than buying the same quantity wholesale. Lieutenant Jewell further testified that someone who is planning to use marijuana generally has in his possession some sort of device with which to smoke it.
Detective Brown testified that Mr. Huntley did not have any drug paraphernalia on him such as papers, cigars, pipes, or scales. On the other hand, Mr. Huntley testified that he also possessed a cigarette lighter, a cellular telephone, and two cigars.
|fiMr. Huntley testified that on May 19, 2009, between 3:30 and 4:00 PM, he was walking down the canal bank on his way to a friend’s house, when police officers grabbed him and searched him. He denied that the canal bank was used to avoid the police. He possessed about 10 bags of marijuana, all of which he planned to smoke. He had no money or scales on his person. He usually smokes two small bags of marijuana in a sitting. Mr. Huntley stated he bought all of the bags from a narcotics dealer for $40.00. He uses hollowed out cigars to smoke marijuana. In three to five hours he and his friends could smoke the entire bag of marijuana that the officers seized. Mr. Huntley testified that *648 he does not sell marijuana. He has two prior convictions for possession of cocaine and one conviction for possession of stolen things.

Analysis

Sufficiency

Mr. Huntley complains that the evidence at trial was not sufficient to support his conviction of possession of marijuana with intent to distribute. He concedes that the state proved the element of possession, but he argues the state failed to prove the marijuana was intended for sale rather than for an addict’s personal use. The state disagrees.
The constitutional standard for sufficiency of the evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find that the state proved all of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. The reviewing court “does not determine whether another possible hypothesis suggested by a defendant |ficould afford an exculpatory explanation of the events” but rather must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. La.R.S. 40:966(A); State v. Kelly, 01-321, p. 4 (La.App. 5 Cir. 10/17/01), 800 So.2d 978, 982, writ denied, 01-3266 (La.11/1/02), 828 So.2d 565. As noted above, Mr. Huntley does not challenge the finding that he was in possession of marijuana; only the determination that he had specific intent to distribute marijuana.
Specific intent is defined as that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La.R.S. 14:10(1). Factors that may give rise to a reasonable inference that defendant had the specific intent to distribute include 1) previous attempts to distribute, 2) whether the drug was in a form consistent with distribution to others, 3) the amount of the drug, 4) expert or other testimony showing the amount found in the defendant’s possession to be inconsistent with personal use only, and 5) paraphernalia evidencing an intent to distribute. Kelly, supra (citations omitted). In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. State v. Hearold, 603 So.2d 731, 735-736 (La.1992).
|7Lieutenant Jewell, an expert in the use, packaging, distribution, and value of narcotics in Jefferson Parish, testified about his extensive experience and training in this area. He identified the three primary factors he uses to distinguish simple possession of narcotics from possession with the intent to distribute as value, packaging, and quantity.
Lieutenant Jewell stated that the manner in which the marijuana in this case was *649 packaged did not indicate to him that it was intended for personal use. In particular, it would not be reasonable for a user to buy that much marijuana (14 to 15 grams) in small individual bags that retail on the street for $10.00 dollars.
Lieutenant Jewell further testified that a person who intends to use marijuana commonly has paraphernalia associated with marijuana use, such as cigars or pipes. The jury heard conflicting testimony from Detective Brown and Mr. Huntley regarding whether Mr. Huntley had paraphernalia indicative of marijuana use at the time of his arrest. The jury also heard testimony from Mr. Huntley explaining that he did consume more than one bag of marijuana at a time. The jury did not, apparently, credit Mr. Huntley’s testimony. It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168, 171 (citation omitted).
Having reviewed the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that the state proved that Mr. Huntley knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. Accordingly, this assignment of error lacks merit.

Suppression

Mr. Huntley argues that . the police lacked reasonable suspicion to stop him; there was no probable cause to arrest him; and, the search was unwarranted.
|RMr. Huntley filed a motion to suppress evidence on the basis that the evidence was illegally obtained. At the hearing, Detective Justin Brown testified on behalf of the state. Detective Brown stated that since October 2008, he has been assigned to the Jefferson Parish Sheriffs Office Street Crimes Unit. As part of that operation, he conducted narcotics investigations. On May 19, 2009, he assisted in Mr. Huntley’s arrest.
He testified that he and his partner were assisting another unit at the intersection of Tallowtree Lane and 21st Avenue. Detective Brown was in uniform at the time. As he exited his car, he saw Mr. Huntley coming up the canal bank behind the apartments that run parallel to Tallow-tree Lane. Detective Brown stated that he was familiar with that canal bank, which was commonly used as a “cut;” that is, as a means to move in and out of the neighborhood without being observed, especially by the police. He explained that the canal bank was commonly used to avoid the police in that neighborhood. He saw Mr. Huntley on the canal bank walking toward them. At that point, Detective Brown did not think Mr. Huntley had yet seen them. However, at some point, Mr. Huntley saw the police vehicle. When he spotted the vehicle, Mr. Huntley looked at the officers, stopped abruptly, and thrust his hands in his pockets. These mannerisms drew the officer’s attention. Detective Brown thought that by thrusting his hands into his pockets, Mr. Huntley was trying to hide something. Consequently, Detective Brown decided to conduct a field interview. He asked Mr. Huntley to remove his hands from his pockets. Mr. Huntley refused and pushed his left hand further into his pocket. Detective Brown explained that he asked Mr. Huntley to remove his hands for the officer’s safety. Detective Brown moved toward Mr. Huntley. He and his partner escorted Mr. Huntley to a concrete barrier at the end of 21st Street. They grasped his arm and attempted to remove Mr. Huntley’s hand out of his pocket. They pulled his 19hand out of his pocket and in his hand were 10 bags containing what was later determined to be *650 marijuana. Mr. Huntley was placed under arrest at this time and advised of his Miranda[3] rights.
During cross-examination, Detective Brown testified that he did not see Mr. Huntley committing a crime as he walked on the canal bank. And, no one had alerted them that someone on the canal bank was committing a crime.
Defense counsel argued that Detective Brown lacked reasonable suspicion to stop Mr. Huntley and conduct a search. She stated that the pulling of Mr. Huntley’s hand out of his pocket and finding marijuana was, unlawful. The state responded that based on the officer’s training, the officer believed that Mr. Huntley was displaying suspicious behavior in making furtive movements. As a result of the continued refusal to remove his hands from his pocket, the officer was concerned for his safety. Thus, the officer physically removed the hands from the pockets so as to make certain that Mr. Huntley did not possess a weapon or anything that could be dangerous to the officers. As a result, they found 10 baggies of marijuana. There was reasonable suspicion to stop Mr. Huntley and probable cause for the arrest.
The trial judge found that for officer’s safety, the officer was entitled to have Mr. Huntley remove his hands and observe what was in his hands when they were removed. He denied the motion to suppress the evidence.
As a general rule, an appellate court may review the testimony at trial in determining the correctness of the trial court’s pre-trial ruling on a motion to suppress. State v. Sherman, 04-1019, p. 1 (La.10/29/04), 886 So.2d 1116, 1116 (per curiam) and the cases cited therein. This review may provide supplemental information relevant to the suppression issue. Id. It may also disclose conflicting | intestimony relevant to the credibility of the witness. However, in many cases the testimony at trial may not diverge from the evidence adduced at a pre-trial hearing on a motion to suppress. Id. at 2, 886 So.2d at 1116. An appellate court is therefore not required to review the testimony at trial in every instance. Id.
We have reviewed supplemental information given at the trial relevant to the suppression issue. That evidence, does not, however, affect the result we reach in the instant case. We have taken into consideration Detective Brown’s testimony at trial, in which he explained that the area was well known for street corner narcotics deals and he grabbed Mr. Huntley’s arm because he was concerned that Mr., Huntley might have a gun or a knife in his pocket. We have also taken into consideration Detective Brown’s trial testimony that after moving Mr. Huntley to the concrete barrier, he performed a patdown search of Mr. Huntley’s outer clothing and again ordered Mr. Huntley to take his hand out of his pocket. When Mr. Huntley refused, Detective Brown and his partner pulled his hand from his pocket. Mr. Huntley was holding a large plastic bag containing 10 individually-wrapped plastic baggies. Each baggie was hand-tied, and contained what Detective Brown believed to be marijuana. The officer performed a field test on the substance in the baggies, and it was positive for marijuana.
The state bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Honeycutt, 08-126, p. 6 (La.App. 5 Cir. 5/27/08), 987 So.2d 250, 253. The trial judge’s decision to deny a motion to suppress is afforded *651 great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. Id. at 6, 987 So.2d at 253-54.
It is well established that a police officer may conduct a brief investigatory stop when the officer has a reasonable articula-ble suspicion of criminal activity. 11La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Under the Terry standard, as codified in Article 215.1, police officers may stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. State v. Ayche, 07-753, pp. 6-7 (La.App. 5 Cir. 3/11/08), 978 So.2d 1143, 1148.
In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts must look at the totality of the circumstances of each case, a process which allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. State v. Boyer, 07-476, p. 17 (La.10/16/07), 967 So.2d 458, 469-70. Police do not have to observe what they know to be criminal behavior before investigating. The requirement is that the officer have a reasonable suspicion of criminal activity. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989.
An officer’s mere unparticular-ized suspicion or “hunch” of criminal activity is insufficient to establish reasonable grounds to stop a person. State v. Burns, 04-175, p. 5 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076. Factors that may support reasonable suspicion for an investigatory stop include an officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s high incidence of crime. State v. Ayche, 07-753, p. 7 (La.App. 5 Cir. 3/11/08), 978 So.2d 1143, 1149. While an individual’s mere presence in a high-crime area, standing alone, is insufficient to justify an investigatory stop, his presence in a high crime area, coupled with nervousness, startled behavior, flight 1 i2or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop. Burns, supra, 04-175 at 6, 877 So.2d at 1076.
Based on the totality of the circumstances, the officers had reasonable suspicion to support an investigatory stop. Detective Brown, an experienced narcotics officer, knew the neighborhood as a high crime area frequented by street corner drug dealers. He also knew that the canal embankment where Mr. Huntley was walking was traveled by persons involved in criminal activity who wished to elude police detection. Mr. Huntley stopped walking when he saw the officers, and he exhibited nervous behavior. He put his hands into his pockets as if he were hiding something. Since Detective Brown reasonably believed defendant was hiding something in his pockets that could pose a threat to his safety, and Mr. Huntley refused to show his hands despite several requests by the officers, the officers were justified in using physical force to remove Mr. Huntley’s hand from his pocket.
In State v. Kelly, 06-0475 (La.App. 4 Cir. 11/21/06), 946 So.2d 222, a New Orleans police officer assigned to patrol a public housing project received complaints from several residents of the project, an area well known for illegal drug activity, of *652 drug trafficking in a specific hallway of a particular building. While on foot patrol in the project, the officer saw the defendant walking out of the hallway indicated by the complaining residents while looking down at an object in his right hand. Id., 06-0475 at 2, 946 So.2d at 224. When the defendant saw the uniformed officer, he immediately closed his hand, put his hand in his pocket, and moved in a nervous manner. The officer initiated an investigatory stop of the defendant and, for safety reasons, asked him to remove his hand from his pocket. The defendant gave his name but continued to move away from the officer with his hand in his pocket. The officer moved to force the defendant to remove his hand |1sfrom his pocket. At that point, the defendant opened his hand to reveal a syringe and a piece of foil containing heroin. The officer then placed the defendant under arrest. Id., 06-0475 at 2-3, 946 So.2d at 224. On appeal, the court determined that the police officer was justified in asking the defendant to remove his hands from his pockets, and in taking action to insure the defendant complied with that request, since the officer was acting to insure his own safety. Id., 06-0475 at 5, 946 So.2d at 225.
In State v. Gray, 99-47 (La.App. 5 Cir. 6/1/99), 738 So.2d 668, this Court upheld the seizure of marijuana that was discovered during a pat down search of the defendant for weapons, despite the fact that the defendant was in handcuffs prior to the frisk. The defendant was among four young men who were stopped by the police for a suspected curfew violation. The officer asked the suspects to place their hands on the car so that he could conduct a weapons search. The defendant continually refused to remove his hands from his pockets and was subsequently handcuffed. Id., 99-47 at 2, 738 So.2d at 669. While he was handcuffed, the officer conducted a frisk for weapons, at which time he discovered a plastic bag containing marijuana in the defendant’s pocket.
This Court commented that the officer was warranted in handcuffing the defendant prior to the patdown because he reasonably believed that his safety was at risk when the defendant continually refused to remove his hands from his pockets. This Court concluded that placing the defendant in restraints in order to search for a weapon was reasonable. See also: State v. Rabon, 00-0935, p. 1 (La.6/30/00), 764 So.2d 944, 945 (per curiam), citing 4 Warren R. LaFave, Search and Seizure, § 9.5(a), in which the Louisiana Supreme Court commented that a defendant’s inexplicable failure to remove a hand from a pocket may give rise to reasonable suspicion for a weapons search.
| uMr. Huntley also complains that his arrest was illegal. An arrest made without probable cause is illegal and the seizure of evidence pursuant to an illegal arrest is also illegal. State v. Graham, 01-1232, p. 10 (La.App. 5 Cir. 5/29/02), 820 So.2d 1101, 1106, unit denied, 02-1770 (La.12/19/02), 833 So.2d 329. In this case, Detective Brown’s discovery during the investigatory stop that Mr. Huntley was carrying plastic bags containing what he considered to be marijuana was sufficient to establish probable cause for a valid warrantless arrest.
Under these circumstances, we find no error in the trial court’s denial of Mr. Huntley’s motion to suppress the evidence. Thus, this assignment lacks merit.

Error Patent

Mr. Huntley requests an error patent review. This Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether defendant makes such a re *653 quest. For the reasons that follow, we find no errors patent requiring corrective action.
La.R.S. 15:529.1(D)(l)(a) requires that the defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the state must prove its case. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent. Generally, the failure of the trial court to advise the defendant of his right to a hearing and his right to remain silent is not considered reversible error where the defendant’s habitual offender status is established by competent evidence offered by the state at a hearing rather than by admission of the defendant. However, when the guilt of the defendant is proven by his own stipulation or admission to the habitual offender bill of information, without having been informed of his right to a hearing or his right to remain silent 11sby either the trial court or his attorney, there is reversible error. State v. Bell, 03-217 (La.App. 5 Cir. 5/28/03), 848 So.2d 87, 88 (citations omitted); State v. Delaney, 42,990, p. 18 (La.App. 2 Cir. 2/13/08), 975 So.2d 789, 799.
The trial judge’s failure to sufficiently advise the defendant of his statutory, La. R.S. 15:529.1, multiple offender rights is an error patent. State v. Babineaux, 08-705, p. 10 (La.App. 5 Cir. 1/13/09), 8 So.3d 621, 627.
In this case, the trial judge did not advise Mr. Huntley of his right to a formal hearing at which the state must prove its case or of his constitutional right to remain silent. Even so, the failure of the trial court to advise Mr. Huntley of these rights is not reversible error because Mr. Huntley’s habitual offender status was established by competent evidence offered by the state at a hearing rather than by Mr. Huntley’s admission.
In this case, the state introduced the bill of information containing fingerprints and the commitment/minute entry for the predicate conviction, which indicated that Mr. Huntley was represented by counsel and waived his Boykin triad of constitutional rights. The state also elicited testimony from an expert in the field of fingerprint analysis and examination. She linked Mr. Huntley’s fingerprints taken that day by her to. those contained in the record of the predicate conviction.

Conclusion

Because we find no merit in any of Mr. Huntley’s assignments of error, we affirm the conviction and the enhanced habitual offender sentence.

. The record does not contain a written motion to reconsider the sentence imposed on November 6, 2009. We note that upon entering the order of appeal, the trial court is not divested of jurisdiction to “take other appropriate action pursuant to a properly made or filed motion to reconsider sentence.” La. C.Cr.P. art. 916(3).

. This Court granted defense counsel's motion to supplement the record with the habitual offender proceedings and to suspend briefing delays pending supplementation.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).