FREDERICKA HOMBERG WICKER, Judge.
|2The defendant/appellant appeals his conviction and sentence, challenging both the investigatory stop and the warrantless search of his vehicle. For the reasons more fully discussed below, we find that the officer had reasonable suspicion to conduct the investigatory stop and that the evidence was properly seized pursuant to the inventory search exception. Aceord-ingly, the conviction and sentence are affirmed.
Factual and Procedural Background
The defendant/appellant, Mr. Shelton Keller, was charged by bill of information on March 29, 2007 with possession with intent to distribute ecstasy, in violation of La. R.S. 40:966(A)(1). He pled not guilty at the arraignment. He then filed various pretrial motions, including motions to suppress the evidence. Two suppression hearings were held in this case. The first suppression hearing commenced on November 27, 2007 but was continued until January 22, 2008, due to the unavailability of some of the witnesses. After the hearing, the trial judge took the matter under advisement and denied the motion on February 11, 2008. | -jThe second suppression hearing was held on August 17, 2009. That motion was denied in open court.
Sergeant Anthony Joseph, a patrol supervisor with the St. James Parish Sheriffs Office, testified at both suppression hearings. He testified that on February 20, 2007, he was on patrol in an unmarked unit in a high-crime area in Lutcher, Louisiana. Upon approaching the intersection of Railroad Avenue and Levy Gaudet Street, Sgt. Joseph observed three black males standing at the rear of an SUV. He observed two of the men participate in what appeared to be a hand-to-hand transaction. When he exited the unit to approach the men, he smelled a strong odor of marijuana in the immediate area. He informed the two men what he observed, performed a Terry[1] frisk and asked them for their identification. The two men presented valid Louisiana identification cards — one man was identified as Mr. Milton James, Jr. and the other was identified as the defendant, Mr. Shelton Keller.
*382 Sgt. Joseph asked the men whether they were in possession of any illegal drugs or weapons. They said no. He then asked them to empty their pockets. Mr. Keller removed a wallet, cash, and car keys from his pocket which he placed on the rear of the SUV. Sgt. Joseph then asked who owned the SUV. Mr. Keller stated that it was “for his cousin.” Sgt. Joseph called dispatch to check for warrants in both St. James and St. John parishes. The dispatcher indicated there was an attachment for Mr. Keller in St. John Parish for a traffic violation and that St. John Parish Sheriffs Office wanted him arrested. Sgt. Joseph then gave dispatch the license plate number to the SUV to determine who the owner was. Dispatch informed Sgt. Joseph that the SUV was registered to Mr. Keller.
|4Based upon the outstanding attachment, Sgt. Joseph advised Mr. Keller of his Miranda rights, arrested him for St. John Parish, and placed him in the rear of the patrol unit. After Mr. Keller was arrested, Sgt. Joseph called the wrecker service to tow the vehicle. He also called Deputy Jordan — the K-9 handler — and informed him about the strong smell of marijuana in the immediate area. When Deputy Jordan arrived on the scene, he began to patrol the area and the K-9 “immediately alerted to the blue Expedition” registered to Mr. Keller.
Sgt. Joseph asked Mr. Keller for the keys to the SUV so that he could conduct the inventory search. Mr. Keller told Sgt. Joseph that the keys were with his cousin who was down the street. Sgt. Joseph then observed that the keys Mr. Keller placed on the rear of the SUV had a Ford key on the key ring. Sgt. Joseph tried the key and it unlocked the door. Once the door opened, Sgt. Joseph smelled a much stronger odor of marijuana emanating from inside. He then opened the console where he discovered a large, clear plastic bag containing a green leafy substance and numerous pills, which tested positive for marijuana and ecstasy.
Sgt. Joseph testified that internal procedure required him to inventory the Expedition because it could not remain parked on the public street. He further stated that he did not give Mr. Keller an opportunity to have someone come pick up the vehicle because Mr. Keller had been untruthful about owning the vehicle and about the key’s whereabouts.
After the second motion to suppress was denied, Mr. Keller withdrew his not guilty plea and entered a plea of nolo contendere on February 17, 2010. He was sentenced to five years imprisonment at hard labor in the Department of Corrections with credit for time served. The sentence was imposed without the benefit of probation, parole, or suspension of sentence. The sentence was to run concurrent with any sentence he received in his probation revocation case. The [ atrial court suspended imposition of the sentence, pending the outcome of the present appeal.
Assignment of Error
Mr. Keller contends that the trial court erred in denying the motion to suppress, arguing that Sgt. Joseph lacked reasonable suspicion to conduct the initial Terry stop and that the warrantless search was unjustified.
Discussion

Reasonable Suspicion

Mr. Keller first contends that Sgt. Joseph lacked reasonable suspicion to conduct the Terry stop, further arguing that if reasonable suspicion existed, it was dispelled when Sgt. Joseph discovered no hand-to-hand transaction had occurred.
In determining whether the police possessed the requisite minimal level *383 of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts must look at the totality of the circumstances of each case. State v. Huntley, 10-0406, p. 11 (La.App. 5 Cir. 1/25/11), 60 So.3d 644, 651 (citation omitted). Police do not have to observe what they know to be criminal behavior before investigating. Id. The requirement is that the officer have a reasonable suspicion of criminal activity. Id. (citation omitted).
Reasonable suspicion is something less than probable cause to arrest. State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968. Rather, it requires that officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual’s right to be free of government interference. Id.
An officer’s mere unparticular-ized suspicion or “hunch” of criminal activity is insufficient to establish reasonable grounds to stop a person. State v. Dickerson, 10-0672, p. 6 (La.App. 5 Cir. 4/26/11), 65 So.3d 172, 176 citing, State v. Burns, 04-175, p. 5 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076. Factors that may support reasonable suspicion for an investigatory stop include an officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s high incidence of crime. Id. citing, State v. Ayche, 07-753, p. 7 (La.App. 5 Cir. 3/11/08), 978 So.2d 1143, 1149. While an individual’s mere presence in a high-crime area, standing alone, is insufficient to justify an investigatory stop, his presence in a high crime area, coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop. Huntley, supra, at 651 (citation omitted).
Sgt. Joseph testified that he observed two men engage in what appeared to be a hand-to-hand transaction in an area known to him to be a high-crime area. He distinguished the interaction from a handshake noting its brevity and that the men did not lock hands. Once Sgt. Joseph exited the patrol unit to approach the men, he smelled a strong odor of marijuana in Mr. Keller’s immediate area thereby increasing his suspicion that criminal activity was transpiring. Once the sergeant approached the men, however, he was unable to identify what, if anything, had been exchanged.
This Court has previously upheld such investigatory stops when the officer was unable to identify the object of the exchange. In State v. Flagg, 99-1004, p. 8 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 527, writ denied, 00-1510 (La.3/9/01), 786 So.2d 117, this Court held that “reasonable suspicion to justify an investigatory stop existed when [the officer] observed the defendant engage in what the officer believed was a hand-to-hand transaction,” even though the State presented no testimony that the officer could see what was exchanged. State v. Sam, 08-0220, p. 6 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 770. Likewise, in Sam, supra, we found that the officers had reasonable suspicion to justify the stop, even though they could not identify what was exchanged. Id. at 771.
Based on the totality of the circumstances, Sgt. Joseph had reasonable suspicion for the initial stop in this case even though he was unable to identify the object of the exchange. Having found that reasonable suspicion existed for the initial stop, the next question is whether the detention became illegal before Mr. Keller’s arrest.
To determine whether the detention was too lengthy, the court must *384 look to the diligence of the police in pursuing a means of investigating likely to confirm or dispel their suspicions quickly. State v. Fort, 95-0882, p. 3 (La.App. 3 Cir. 1/31/96), 670 So.2d 319, 321 citing State v. Arrington, 556 So.2d 263 (La.App. 2 Cir. 1990). Once an officer’s suspicions have been dispelled, the detention must end unless there is additional, articulable reasonable suspicion. State v. Dixon, 39,994, p. 7 (La.App. 2 Cir. 9/21/05), 911 So.2d 372, 376, citing U.S. v. Santiago, 310 F.3d 336 (U.S. 5 Cir.2002). There is no bright-line rule for determining when a lawful detention lasts too long. Dixon, supra, at 377 (citation omitted). Each instance must be assessed in view of the surrounding circumstances. Id.
Mr. Keller contends that once Sgt. Joseph discovered no hand-to-hand transaction occurred, he had no reasonable suspicion to continue the detention. Upon review of the record before us, however, we find that Sgt. Joseph had additional articulable reasonable suspicion to continue the detention.
We first note that Sgt. Joseph smelled a strong odor of marijuana in the immediate area which odor grew stronger as he approached Mr. Keller’s SUV. To add, Mr. Keller was untruthful with Sgt. Joseph when he told him that the truck was “for his cousin” and that his cousin had the keys down the street. These facts, taken together, gave Sgt. Joseph additional reasonable suspicion to continue the Isdetention. We finally note that throughout the entire interaction, Sgt. Joseph continuously engaged in a means of investigating to confirm or dispel his suspicion by remaining in constant contact with dispatch and by calling the K-9 handler.
Based on the totality of the circumstances, there were additional articulable circumstances which allowed Sgt. Joseph to continue his investigation to determine whether criminal activity was afoot.

Warrantless Search

Mr. Keller also contends that the trial court erred in denying the motions to suppress, arguing that the warrantless search was unjustified. He specifically argues that the warrantless search cannot be upheld under the inventory search exception, the search incident to arrest exception, or the probable cause exception.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. Dickerson, supra, at 176. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. Id. Thus, war-rantless searches and seizures are per se unreasonable unless justified by one of the exceptions to the warrant requirement. Id.
When faced with a motion to suppress the evidence, the state bears the burden of proving the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Wolff, 09-0508, p. 5 (La.App. 5 Cir. 12/29/09), 30 So.3d 897, 901 (citation omitted).
The United States Supreme Court has “consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody |8where the process is aimed at securing or protecting the car and its contents.” State v. Escoto, 09-2581, p. 4 (La.7/6/10), 41 So.3d 1160, 1163, citing South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092,3099, 49 L.Ed.2d 1000 (1976). These inventory *385 procedures developed in response to three distinct needs, “the protection of the owner’s property while it remains in police custody, the protection [sic] the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger.” Id. An essential requirement to a valid inventory search is that the police “must have acted in good faith in conducting the inventory, and must not have used the inventory procedure as a subterfuge for a warrantless search.” State v. Jewell, 338 So.2d 633 (La.1976).
Louisiana courts consider the following factors in determining whether a true inventory search has taken place:
(1) whether the vehicle could not have remained safely where it was located; (2) whether the search was conducted in the field; (3) whether a tow truck was called before the search commenced; (4) whether formal impoundment procedures were followed; (5) whether the vehicle operator was asked if he consented to a search, if the car contained any valuables, or if he would consent to a waiver of the protections afforded by an inventory search; (6) whether the operator was given an opportunity to make arrangements for someone to pick up the vehicle for them. Escoto, supra, at 1163 (citations omitted).
The absence of a few elements to be considered in evaluating whether or not a true inventory search was conducted does not necessarily invalidate the search. State v. Robinson, 98-0005 (La.App. 4 Cir. 9/29/99), 743 So.2d 814, 818. Rather, “it is the totality of the circumstances and the true purpose of the inventory that determine the issue.” Id.
In Jewell, supra, the Louisiana Supreme Court held that the search could not be upheld as a valid inventory search. In that case, the Court noted that the wrecker service was not called until after the defendant was arrested; the record was void of any evidence that the standard inventory forms were used; and that the | inincriminating evidence was found inside an Excedrin bottle — an “unlikely place for an owner to keep anything of value.” Jewell, supra, at 639.
The present case, however, is distinguishable from Jewell. The evidence presented at the suppression hearings indicates that the wrecker service was called after Mr. Keller’s arrest but before the inventory search commenced. Sgt. Joseph testified that he completed the inventory report in compliance with the sheriffs department’s internal procedure. And the incriminating evidence in this case was found within the console — a very common place for an owner to keep valuables. Sgt. Joseph further testified that the vehicle had to be towed because it was parked on a public roadway. Sgt. Joseph also explained that he did not give Mr. Keller the opportunity to have someone pick up the vehicle because Mr. Keller had been untruthful about owning the vehicle and the location of the keys.
Based on the totality of the circumstances, we find that the search was a good faith inventory search and not a subterfuge for a warrantless search. We, therefore, find no error in the trial court’s denial of the motions to suppress. Having found the warrantless search was a good faith inventory search, we pretermit discussing Mr. Keller’s assertion that the search was invalid under the search incident to arrest exception and probable cause exception.
Error Patent Discussion
We have reviewed the record for errors patent in conformity with La. C.Cr.P. art. 920. See State v. Oliveaux, *386 312 So.2d 337 (La.1975). A review of the record reveals one error.
A review of the record reflects that Mr. Keller was not properly advised of the time delay within which to file an application for post-conviction relief. The transcript indicates that the trial judge informed Mr. Keller that he could “appeal lnwithin two years after the judgment of conviction and sentence have become final.”
In the past, this Court has ordered the trial court to properly advise defendant of the prescriptive period under LSA-C.Cr.P. art. 930.8 by written notice within ten days of the rendition of this Court’s opinion and then to file written proof in the record that defendant received the notice. However, in State v. Morris, 40,322 (La.App. 2 Cir. 1/25/06), 920 So.2d 359, 363, the Second Circuit corrected this error patent by way of its opinion rather than a remand. State v. Davenport, 08-463, p. 11 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451.
Accordingly, we hereby advise Mr. Keller that, pursuant to La.C.Cr.P. art. 930.8, no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. art. 914 or 922.
For the foregoing reasons, Mr. Keller’s conviction and sentence are affirmed.

AFFIRMED

. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).