STATE OF LOUISIANA      *      NO. 2024-K-0217

VERSUS      *

DAMIEN J. DEBOSE      *      COURT OF APPEAL

     *      FOURTH CIRCUIT

     *      STATE OF LOUISIANA

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 559-903, SECTION "I"
Honorable Leon T. Roche, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)

Jason R. Williams, District Attorney
Zachary M. Phillips, Assistant District Attorney
Patricia Amos, Assistant District Attorney
Brad Scott, Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 South White Street
New Orleans, LA 70119

     COUNSEL FOR RELATOR, State of Louisiana

R. Judson Mitchell, Jr., Supervising Attorney
Chloie MacGregor, Student Practitioner
LOYOLA LAW CLINIC
7214 St. Charles Avenue, Box 902
New Orleans, LA 70118

     COUNSEL FOR RESPONDENT, Damien J. Debose

**WRIT GRANTED; JUDGMENT REVERSED**
**JUNE 13, 2024**

DNA

JCL

SCJ

This is a criminal case. Relator, the State of Louisiana ("State"), seeks review of the district court's March 15, 2024 judgment, which granted the "Motion for Suppression of Statements, Evidence and Identifications" ("Motion to Suppress") filed by Respondent, Damien J. Debose ("Mr. Debose"). For the following reasons, we grant the State's writ application and reverse the district court's judgment.

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On November 3, 2023, the State charged Mr. Debose via bill of information with one count of unauthorized use of a motor vehicle in violation of La. R.S. 14:68.4; one count of possession of a controlled dangerous substance (Oxycodone) in an amount of less than two grams in violation of La. R.S. 40:967(C)(1); and one count of possession of a controlled dangerous substance (Alprazolam) in an amount of less than two grams in violation of La. R.S. 40:966(C)(1)(a). When Mr. Debose appeared for arraignment on November 15, 2023, he pled not guilty to all charges. Then, on December 4, 2023, Mr. Debose filed his Motion to Suppress as part of an "Omnibus Motion for Discovery; Motion to Preserve Evidence; Motion for Suppression of Statements, Evidence and Identifications; and Motion for a

1

Preliminary Examination" ("Omnibus Motion"). In the Motion to Suppress part of his Omnibus Motion, Mr. Debose stated:

> **Physical Evidence**: Suppression is requested — pursuant to, *inter alia.* the Fourth Amendment and Article I, § 5 of the Louisiana Constitution of 1974 — of any evidence obtained, whether with or without a warrant, absent the requisite probable cause or reasonable suspicion, and/or absent compliance with other constitutionally- and statutorily-mandated rules governing state intrusion into individual privacy.

Mr. Debose did not specify the physical evidence for which he sought suppression. Thereafter, the matter proceeded before the district court.

### Hearing

The district court held a hearing in this matter on February 21, 2024, and asked at the outset, "what motions lie?" In response, counsel for Mr. Debose responded, "Probable cause." When the district court further questioned if that was the only motion, counsel for Mr. Debose replied, "Yes, probable cause."

### *Officer Jonathan Fowlkes' Testimony*

The State then proceeded to call its first and only witness, Officer Jonathan Fowlkes ("Officer Fowlkes"), and he identified himself as a senior police officer who had been employed by the New Orleans Police Department ("NOPD") since 2016. Officer Fowlkes explained that he was employed in that capacity on September 4, 2023, on which date he became involved in the investigation of Mr. Debose. In particular, Officer Fowlkes stated that he was working as the back part of a patrol unit on that date at a gas station on Morrison Road in New Orleans.[1] Regarding the gas station, Officer Fowlkes explained, "[That is] one of our issue

---

[1] Officer Fowlkes could not recall "if it was the morning hours yet or the night hours."

gas stations, you could say. [We have] had a lot of drug activity. [There has] also been a lot of violence in that area, and so we regularly patrol that area."

Officer Fowlkes testified that, upon arriving at the scene, he "observed four individuals standing next to a silver Volkswagen SUV," who "start[ed] to run" when the officers in the patrol unit arrived at the scene. Officer Fowlkes explained that after the four individuals ran, he assisted other officers in apprehending one of the individuals, Mr. Debose. When asked whether he had reason to believe that any criminal activity had occurred at that time, Officer Fowlkes responded:

> Well, considering they ran upon seeing police officers - - when the officers initially pulled in, they [did not] activate lights or anything, they just pulled in -- and upon seeing the police vehicles, [the four individuals] immediately ran. . . . [W]hen they started running, I heard other officers telling [the four individuals] to stop, and they did not stop until we apprehended Mr. Debose near Morrison, and the other defendants as well.

Officer Fowlkes explained that after he and the other officers apprehended Mr. Debose, they placed him into a patrol unit, and he recalled that "another officer may have done a search incident to arrest."

Additionally, Officer Fowlkes stated that the officers then searched the SUV's license plate and VIN in their database, whereupon they discovered that the license plate had been switched and the vehicle was stolen. Counsel for the State asked Officer Fowlkes what the officers did next, and he stated:

> The other officer that had done the search mentioned that they had found a set of keys in Mr. Debose's pocket. Those keys were actually for the Volkswagen. Once we figured out the Volkswagen was stolen, we searched the vehicle and [that is] when we located multiple baggies of white powder, a pill bottle, and a cough syrup bottle inside the vehicle.

Officer Fowlkes recalled that the pill bottle contained Xanax.[2] When asked on cross-examination whether Mr. Debose was ever seen exiting the SUV, Officer Fowlkes responded that video footage from the gas station showed Mr. Debose exiting the SUV at some point in time.

***Argument by Counsel***

After the close of Officer Fowlkes' testimony, the trial court heard argument from counsel. Counsel for Mr. Debose argued that the district court should rule that there was "no probable cause because there was no reasonable suspicion to conduct the stop in the first place," contending that "[r]unning away from officers is not enough to incite reasonable suspicion." Counsel for Mr. Debose further argued that the district court should rule that there was no probable cause for the drug-related charges brought against Mr. Debose "because there was no evidence that there were illegal drugs present." Counsel for the State countered that the district court should find probable cause on all of the charges, contending: "When officers arrived, [Mr. Debose] ran. He was in possession of the keys to the stolen vehicle, and inside the stolen vehicle . . . which he had the keys to, there were drugs that were found[;]" and "the officer . . . recognized the Xanax in there."

Thereafter, the district court stated that the issue it had with this case is "why were [the officers] initially trying to detain [Mr. Debose and the other individuals]," further stating that it is "not a crime to run away from the police." The district court questioned, "What was the initial alleged crime that led them to

---

[2] This Court can take judicial notice of government websites. *McClendon v. Sewerage & Water Bd. of New Orleans*, 2023-0531, p. 1 (La. App. 4 Cir. 4/5/24), ___ So.3d ___, ___, 2024 WL 1478066, at *1 (citing *Gniady v. Ochsner Clinic Found.*, 2023-0215, p. 3 (La. App. 4 Cir. 12/28/23), 382 So.3d 378, 382 n.3). We take judicial notice of the National Library of Medicine's MedlinePlus website, which lists Xanax as a brand name for Alprazolam. *Alprazolam*, MEDLINEPLUS, https://medlineplus.gov/druginfo/meds/a684001.html (last updated May 15, 2021).

4

want to detain them in the first place?" Then, the district court stated that it had decided to suppress the evidence seized in the case. In response, the State argued that the hearing was about probable cause only, not about Mr. Debose's Motion to Suppress. Counsel for Mr. Debose pointed out that they had filed the Motion to Suppress and argued that because "there was no reasonable suspicion to stop Mr. Debose at all," then it was correct "to suppress the evidence that was seized as the fruit of that illegal stop." The district court agreed with counsel for Mr. Debose but nonetheless decided to take the matter under advisement and instructed the parties to submit post-hearing memoranda "on why . . . there was or was not probable cause, and  . . . why . . . the evidence should or should not be suppressed."

### March 15, 2024 Judgment

On March 15, 2024, the district court held another hearing, stating "that the sole issue that the Court has to determine is [whether] flight upon the observation of a police officer[] is . . .  enough to make reasonable suspicion for the officer to then detain the person that has fled or that is running." In resolving this issue, the district court concluded that, based on the totality of the circumstances, there was not enough information for it to find that the officers had reasonable suspicion to stop Mr. Debose. The district court stated that, having so concluded, it had decided to grant Mr. Debose's Motion to Suppress. Further, the district court stated that in light of granting Mr. Debose's Motion to Suppress, it had concluded that there was no probable cause for the arrest and search of Mr. Debose.

That same day, the district court issued a judgment, which stated: "Premises considered, it is the [judgment] of this Court that no probable cause be found as it relates to the arrest and search of [Mr. Debose] . . . . The Court HEREBY GRANTS [Mr. Debose]'s Motion To Suppress all evidence seized in this matter on

5

September [4], 2023." Thereafter, the State filed a notice of intent to seek supervisory writs regarding the March 15, 2024 judgment and timely filed this writ application.

## ASSIGNMENTS OF ERROR

In its writ application to this Court, the State asserts two assignments of error:

1. The [district] court abused its discretion by ruling on a suppression issue without allowing the State a genuine opportunity to carry its burden.

2. The [district] court's ruling on probable cause was erroneous or premature in light of the need to reopen the suppression issue.

Having reviewed the State's writ application and Mr. Debose's opposition thereto, however, we find that this matter is properly resolved by our consideration of whether the State proved the officers had reasonable suspicion to stop Mr. Debose, the arrest and search of Mr. Debose, and the warrantless search the SUV. Before resolving these issues, we begin with the standard of review applicable to motions to suppress.

## STANDARD OF REVIEW

District courts have great discretion when ruling on motions to suppress, and an appellate court will not disturb a district court's ruling on a motion to suppress unless the district court abused its discretion. *State v. Willis*, 2022-0452, pp. 6-7 (La. App. 4 Cir. 9/1/22), 348 So.3d 167, 172 (quoting *State v. Polkey*, 2020-0482, p. 3 (La. App. 4 Cir. 11/25/20), 310 So.3d 605, 608). The reason the district court's decision "on a motion to suppress . . . is entitled to great weight" is "because the [district] court has the opportunity to observe the witnesses and weigh the credibility of their testimony." *Id.* at p. 7, 348 So.3d at 172 (alteration in original)

6

(quoting *State ex rel. J.S.*, 2008-1401, p. 4 (La. App. 4 Cir. 2/18/09), 6 So.3d 904, 908). As this Court has previously explained though, "a motion to suppress presents a mixed question of law and fact." *Id.* (citing *Polkey*, 2020-0482, p. 4, 310 So.3d at 608). Thus, the appellate court reviews the underlying facts for an abuse of discretion "but reviews conclusions to be drawn from those facts *de novo*." *Id.* When the facts are not disputed, however, then the appellate court need only "consider whether the trial court came to the proper legal determination under the undisputed facts." *Id.*

In the matter *sub judice*, the underlying facts are not in dispute. Accordingly, per *Willis*, we will conduct a *de novo* review of the district court's judgment, which granted Mr. Debose's Motion to Suppress on the basis that the State did not prove probable cause for the arrest and search of Mr. Debose.

## DISCUSSION

### Reasonable Suspicion to Stop Mr. Debose

When orally reciting its ruling at the March 15, 2024 hearing, the district court explained that the State failed to demonstrate that the officers had reasonable suspicion to stop Mr. Debose. Because the district court provided this as the basis for its granting Mr. Debose's Motion to Suppress and finding no probable cause for his arrest and search, we begin our discussion by resolving this issue. Louisiana Code of Criminal Procedure Article 215.1(A) states that "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." Louisiana Code of Criminal Procedure Article 215.1 "codifies the standard enunciated in *Terry v. Ohio*[,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]." *State v. Smith*, 2017-

7

0553, p. 5 (La. App. 4 Cir. 12/13/17), 316 So.3d 1011, 1017. The reasonable suspicion described in La. C.Cr.P. art. 215.1(A) "is less than the probable cause needed to arrest a defendant," but "an officer 'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); and *State v. Temple*, 2002-1895 (La. 9/9/03), 854 So.2d 856, 859-60).

In determining the reasonableness of an officer's suspicion, courts are to consider the totality of the circumstances, including the officer's past experience, training, and common sense; the location of the stop; and the defendant's actions prior to the stop. *State v. Boyles*, 2014-1126, p. 4 (La. App. 4 Cir. 2/4/15), 157 So.3d 1170, 1174 (quoting *State v. Robertson*, 2013-1403, p. 7 (La. App. 4 Cir. 4/9/14), 136 So.3d 1010, 1014) (citing *State v. Morgan*, 2009-2352, p. 4 (La.3/15/11), 59 So.3d 403, 406). Discussing an officer's experience, the Louisiana Fifth Circuit Court of Appeal ("Fifth Circuit") has explained that an officer's "knowledge of recent criminal patterns," as well as an officer's "knowledge of an area's high incidence of crime" are factors that may support reasonable suspicion for an investigatory stop. *State v. Keller*, 2010-865, p. 6 (La. App. 5 Cir. 10/25/11), 77 So.3d 378, 383 (citing *State v. Dickerson*, 2010-0672, p. 6 (La. App. 5 Cir. 4/26/11), 65 So.3d 172, 176). Though "an individual's presence in a 'high-crime area,' alone, is insufficient to support a reasonable suspicion of criminal activity," the "location's characteristics are relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *State v. Morgan*, 2009-2352, p. 5 (La. 3/15/11), 59 So.3d 403, 406 (citing *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000)).

8

Regarding the defendant's actions prior to the stop, "[a]n individual's nervous, evasive behavior is also a pertinent factor in determining whether an officer had reasonable suspicion." *Id.* To this end, "flight from a police officer plays a major role in the totality of the circumstances analysis." *Id.* at p. 6, 59 So.3d at 407 (citing *Wardlow*, 528 U.S. at 124, 120 S.Ct. at 676). Under the totality of the circumstances, "unprovoked flight by an individual in a high-crime area is sufficient to give police officers reasonable suspicion of criminal activity." *Id. See also State v. Hunter*, 2005-0461, p. 4 (La. App. 4 Cir. 1/19/06), 925 So.2d 599, 604 (finding reasonable suspicion when, in pertinent part, an officer testified that he and other officers observed the defendant walk away when he saw the police car).

With these principles in mind, we consider whether the State proved that the officers had reasonable suspicion to stop Mr. Debose and search him. Regarding the location of the investigatory stop, Officer Fowlkes explained that the particular gas station was an "issue" for NOPD, citing drug activity and violence in the area. To this end, Officer Fowlkes explained that NOPD regularly patrolled the gas station. Officer Fowlkes also testified that Mr. Debose and the other individuals began to flee when the officers arrived at the scene, despite the fact that the officers had not arrived with their lights and sirens activated. Moreover, Officer Fowlkes stated that Mr. Debose and the other individuals did not stop although the officers instructed them to do so. Given the totality of the circumstances, Mr. Debose's unprovoked flight in an area cited by Officer Fowlkes as a high-crime area was sufficient to give Officer Fowlkes and the other officers reasonable suspicion of criminal activity. Accordingly, we find that the officers had reasonable suspicion under La. C.Cr.P. art. 215.1 to justify the investigatory stop of Mr. Debose.

9

## Arrest and Search of Mr. Debose

Next, we consider the arrest of Mr. Debose and search of his person after the officers stopped him. As previously stated, the district court concluded that the State failed to demonstrate probable cause for the arrest and search of Mr. Debose. We disagree.

Officer Fowlkes testified that after the officers apprehended Mr. Debose, they placed him in the back of one of the patrol units, and one of the officers performed a "search incident to arrest." Louisiana Revised Statutes 14:108 outlines the crime of resisting an officer. It provides, in pertinent part:

> Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

La. R.S. 14:108(A). As this Court has explained, an essential element of La. R.S. 14:108 is "the defendant's knowledge of his arrest or impending detention." *State in Interest of J.T.*, 2011-1646, p. 18 (La. App. 4 Cir. 5/16/12), 94 So.3d 847, 858. Thus, in interpreting this statute, this Court has held that if an officer is conducting an investigatory stop and the subject of the stop understands that the officer is conducting a stop yet flees, then this constitutes a violation of La. R.S. 14:108(A). *Id.* at pp. 17-18, 94 So.3d at 858-59.

For example, in *State in Interest of J.T.*, an officer, who was riding in a marked police unit and wore a police uniform, "expressly instructed J.T. to approach the police unit," whereupon J.T. "made eye contact with [the officer] and immediately attempted to escape." *Id.* In upholding J.T.'s adjudication for resisting an officer, this Court agreed with the State that, under these

10

circumstances, "not only was it apparent that [the officer] was conducting an investigatory stop, but also that J.T. understood the officer's intent to do so." We find *State in the Interest of J.T.* analogous to the matter *sub judice*.

According to Officer Fowlkes, after Mr. Debose fled upon seeing the officers arrive at the gas station, the officers instructed Mr. Debose to stop, yet he continued fleeing. Mr. Debose's receipt of the directive to stop from officers he had just seen in NOPD vehicles and his failure to do so indicate that he had knowledge of his impending detention by police officers and sought to avoid it. When Mr. Debose refused to comply with the officers' commands to stop, the officers subsequently had probable cause to arrest him for resisting an officer. *See* La. R.S. 14:108. Incident to the arrest, the officers were permitted to search Mr. Debose. *See State v. Sherman*, 2005-0779, p. 13 (La. 4/4/06), 931 So.2d 286, 295 (explaining that "[i]t is well established that a search incident to a lawful custodial arrest is a limited exception to the constitutional prohibition of warrantless searches" (first citing *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973); and then citing *State v. Breaux*, 329 So.2d 696, 699 (La. 1976))). *See also State v. Gayton*, 2013-1613, p. 11 (La. App. 4 Cir. 12/10/14), 156 So.3d 738, 747 (holding that "[o]nce probable cause exists to justify a lawful arrest, a search incidental to that arrest is permissible and requires no further justification") (citing *Robinson*, 414 U.S. at 235, 94 S.Ct. at 477). During this lawful search incident to Mr. Debose's arrest, an officer located the keys to the SUV in Mr. Debose's pocket. The State proved probable cause to arrest and search Mr. Debose after he fled from the officers knowing that they sought to detain him.

## Search of the SUV

Finally, we consider the officers' warrantless search of the SUV. Both the United States and Louisiana Constitutions protect from unreasonable searches and seizures. The Fourth Amendment to the United States Constitution, which is titled "Searches and Seizures; Warrants[,]" provides that people have the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and that this right "shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Similarly, La. Const. art. 1, § 5, states:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

"Based on these provisions, 'a warrantless search and seizure is presumed to be unreasonable.'" *Willis*, 2022-0452, p. 13, 348 So.3d at 175 (quoting *State v. Lockett*, 2012-1561, p. 9 (La. App. 4 Cir. 7/24/13), 120 So.3d 886, 89). To preserve evidence seized without a warrant, the State must demonstrate that one of the limited exceptions to the warrant requirement applies to the facts of the case. *Id.*

One such exception pertains to abandoned vehicles, which may be legally searched without a warrant. *See State v. Kelly*, 576 So.2d 111, 117 (La. App. 2d Cir. 1991); *State v. Parker*, 421 So.2d 834, 842 (La. 1982). This is because "[w]hen property has been abandoned, a person's property interest in it lapses, and

there is no further reasonable expectation of privacy. As a consequence, the property may be searched and seized without the normally required warrant." *Kelly*, 576 So.2d at 117 (citing *State v. Kyles*, 513 So.2d 265 (La.1987)). For example, in *State v. Nieves*, the Fifth Circuit reviewed the defendant's appeal of the district court's denial of his motion to suppress evidence of stolen jewelry found in a warrantless search of the vehicle he had been operating. 525 So.2d 1203 (La. App. 5th Cir. 1988). Two officers observed the defendant stop his vehicle at the exit of a parking lot and run away, after which time one of the officers chased the defendant who struck the officer. *Id.*, 525 So.2d at 1204. The officers then determined that the vehicle was stolen; searched the vehicle without first obtaining a warrant; and discovered stolen jewelry within the vehicle. *Id.* The Fifth Circuit affirmed the district court's denial of the defendant's motion to suppress, noting that "the search was conducted upon abandoned property" and stating that a car is considered abandoned "when it appears the operator of the vehicle left the car behind in an effort to avoid apprehension by the police." *Id.*, 525 So.2d at 1205 (citation omitted). We likewise find that Mr. Debose left the SUV behind in an effort to avoid apprehension by the officers. Accordingly, the officers could search the SUV and seize any property therein without a warrant.

Moreover, we note that, according to Officer Fowlkes' testimony, the officers only searched the SUV after learning that it was a stolen vehicle. Another exception to the warrant requirement is the automobile exception. As this Court has explained, under "the 'automobile exception,' there is no separate exigency requirement if there is probable cause to search a vehicle." *State v. Anderson*, 2006-1031, p. 5 (La. App. 4 Cir. 1/17/07), 949 So.2d 544, 548 (first citing *U.S. v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 2164-65, 72 L.Ed.2d 572 (1982); then

13

citing *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996); and then citing *State v. Thompson*, 2002-0333, p. 10 (La. 4/9/03), 842 So.2d 330, 337-38). That is, "if there is probable cause to search and the vehicle is readily mobile, even if stationary at the time the search proceeded, any evidence will be considered constitutionally seized." *Id.* Probable cause exists when there is "a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

The evidence presented at the March 15, 2024 hearing reflected that prior to the search of the SUV, the officers learned that the vehicle was stolen, and the officers recovered the keys to the stolen vehicle during the search of Mr. Debose. Given these circumstances, the officers clearly had probable cause to believe that the SUV contained evidence of criminal activity, and thus, they were justified in searching the vehicle pursuant to the automobile exception to the warrant requirement.

In sum, we conclude that the State proved that the officers had reasonable suspicion to stop Mr. Debose after he fled from them; the officers conducted the search of Mr. Debose's person incident to a lawful arrest for resisting an officer in violation of La. R.S. 14:108; and the officers' warrantless search of the SUV was constitutionally permissible under the abandoned property and automobile exceptions to the warrant requirement.

**DECREE**

For the foregoing reasons, we grant the State's writ application and reverse the district court's March 15, 2024 judgment, which found no probable cause to arrest and search Mr. Debose and granted Mr. Debose's Motion to Suppress.

**WRIT GRANTED; JUDGMENT REVERSED**