ROSEMARY LEDET, Judge.
_|_lThis is a juvenile delinquency case. The juvenile, J.T.,[1] appeals his delinquency adjudications for resisting an officer, a violation of La. R.S. 14:108, and illegal possession of a handgun by a juvenile, a violation of La. R.S. 14:95.8, and the related dispositions. For the reasons that follow, we affirm the delinquency adjudications, vacate the dispositions, and remand with instructions.
FACTUAL AND PROCEDURAL BACKGROUND
On March 2, 2011, the State filed a petition charging J.T. with two misdemeanor offenses: illegal possession of handgun by a juvenile and resisting an officer. J.T. pled not guilty. Following four defense continuances and several changes in appointed counsel, the adjudication hearing was held on September 7, 2011. At the hearing, the state’s sole witness was New Orleans Police Department (“NOPD”) Officer Brian Bissell.[2] J.T.’s sole witness was Lynndrell Varise, a NOPD communications officer.
Officer Bissell testified that on February 28, 2011, he responded to a dispatch call regarding a “suspicious person” in the area of 1700 block of Urquhart |2Street. According to Officer Bissell, the dispatch call indicated there were “[t]wo suspicious peo-pie, black males, clad in black t-shirts and jeans selling drugs within the block.” When he arrived in the area, Officer Bis-sell observed J.T., who he recognized from previous interactions,[3] sitting on the porch of an obviously blighted property, wearing a black t-shirt. Because J.T. matched the dispatch call description and because he was on blighted property, Officer Bissell attempted to conduct an investigatory stop. At that time, Officer Bissell was still seated in the marked police unit he was driving and clad in a NOPD uniform. Officer Bissell testified that he requested J.T. to come to the police unit. In response, J.T. looked right into Officer Bis-sell’s eyes, got up, and ran. Officer Bissell called for back-up assistance and then chased J.T.
While he was running, J.T. grabbed at his waistband and removed a pistol. J.T. threw the pistol about twenty feet into the air. He apparently was attempting to throw the pistol on top of a residence so that Officer Bissell would have trouble reaching it. The pistol landed in some overgrowth on the ground. J.T. then climbed over a fence. As he was climbing over the fence, J.T. dropped his cell phone on the ground. J.T. went into a backyard and escaped to an alley.
Officer Bissell recovered the cell phone and the pistol from the ground. The pistol was loaded when it was recovered. Officer Bissell called a number on the cell phone and verified that it was J.T.’s cell phone. Officer Bissell then contacted the juvenile division because he was aware that J.T. was on probation and was wearing an ankle monitoring bracelet. The juvenile division provided Officer RBissell with J.T.’s *851 location. Officer Bissell then obtained a warrant for J.T.’s arrest.
On cross-examination, Officer Bissell acknowledged that when he arrived in the area he saw J.T. sitting alone and that he did not see J.T. selling drugs. He testified that the incident occurred at about 5:30 p.m., which was still daylight. Although there were multiple people in the area, Officer Bissell acknowledged that he did not interview any potential witnesses or take any statements. As to the dispatch call, Officer Bissell did not know whether or not the tip regarding a suspicious person was from an anonymous caller. In response to the question whether a dispatch call actually existed, Officer Bissell replied: “I received a call, a dispatch to the location in regard to a signal 107, which is a police department code for a suspicious person in regards to two black males selling drugs, narcotics in the block.”
J.T.’s sole witness was Lynndrell Varise, a NOPD communications officer who answers 911 calls and also serves as custodian of records.' Ms. Varise identified the incident recall, which is a printout of an incident, and the dispatch tape associated with the item number under which J.T. was arrested. She testified that the incident recall did not reference either a 911 call or a description that dispatch sent out regarding a suspicious person. Rather, the incident recall showed only a “unit generated item”; she explained: “a unit called over the air and asked for this item, it was a unit generated item and he gave his location and what he wanted it to be made.”
Ms. Varise acknowledged that the suspicious person dispatch call could have been made but not recorded as associated with the item number under which J.T. was arrested. Ms. Varise further acknowledged that an operator may get a 911 call, I ¿send out the information, and the officer may call in for another item number for a signal. She agreed that this is what “it sounds like” occurred in this case. She noted that on the dispatch tape in question, which was for the unit generated item, the officer referred in the beginning to a suspicious person.
Ms. Varise testified that she was unsure if an officer would have recorded another item number that was associated with an incident. She also testified that “there’s such a thing as a unit history that is recorded in our systems where everything that a police officer goes out on it’s recorded.” She indicated that obtaining the unit history was a possible way. to get the missing information regarding whether there actually was a dispatch call.[4]
Following the hearing, the trial court adjudicated J.T. delinquent on both counts. The trial court noted that Officer Bissell was “an eye witness to the defendant throwing a handgun in the air and finding that [handgun] along with a cell phone.”
On September 28, 2011, a disposition hearing was held. The trial court imposed a disposition of placement with the Office of Juvenile Justice for a period of one year as to the illegal possession of handgun by a juvenile adjudication, La. R.S. 14:95.8, and six months as to the resisting an officer adjudication, La. R.S. 14:108. Both dispositions were made to run concurrent with each other and concurrent with a disposition imposed on J.T. in St. Bernard Parish. On October 7, 2011, the trial court issued a Supplemental and Amending Judgment, which changed the dispositions on the two counts at issue from running | ^concurrently to consecutively, resulting in an eighteen *852 month sentence, but maintained that the dispositions in this case were to run concurrent with the disposition in the St. Bernard case. This appeal followed.
DISCUSSION
On appeal in juvenile delinquency cases, this court’s review extends to both the law and the facts. State ex rel. C.J., 10-1350, p. 4 (La.App. 4 Cir. 2/9/11), 60 So.3d 46, 49 (citing State in Interest of Batiste, 367 So.2d 784, 788 (La.1979)); State in the Interest of C.D., 11-0121, p. 6 (La.App. 4 Cir. 6/29/11), 69 So.3d 1219, 1223 (noting that under La. Const, art. V, § 10(B) appellate courts review both law and facts in juvenile delinquency cases). Like in civil cases, “a factual finding made by a trial court in a juvenile adjudication may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it.” State in the Interest of C.D., supra (citing Batiste, supra). Like in civil cases, the clearly wrong or manifest error standard of review applies in determining whether sufficient evidence exists to meet the beyond a reasonable doubt burden of proof. State in the Interest of T.C., 09-1669, p. 2 (La.App. 4 Cir. 2/16/11), 60 So.3d 1260. Appellate courts accord great deference to trial courts’ factual findings, credibility determinations, and assessments of the testimony of witnesses. State ex rel. W.B., 08-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60, 61.
The standard of proof in a juvenile case is no less strenuous than the standard of proof required in a criminal case. See State ex rel. T.C., 09-1669, p. 2 (La.App. 4 Cir. 2/16/11), 60 So.3d 1260, 1262; State in the Interest of A.G., 630 So.2d 909, 910 (La.App. 4th Cir.1993). Like in a criminal case, the State, in order to adjudicate a child delinquent, is required to prove beyond a reasonable doubt | fithat the accused child committed the delinquent act alleged in the petition. La. Ch.C. art. 883.
The Children’s Code expressly provides that “[a]ll rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana, except the right to trial by jury, shall be applicable in juvenile court proceedings brought under this title.” La. Ch.C. art. 808. The Children’s Code expressly recognizes the right to counsel; it provides that “[a]t every stage of proceedings under this Title, the accused child shall be entitled to counsel.” La. Ch.C. art. 809(A).
The governing principles applicable to an ineffective assistance claim are as follows:
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief filed initially in the district court where a full evidentiary hearing can be held.... However, in the interest of judicial economy, an appellate court can consider an ineffective assistance claim if the record on appeal contains sufficient evidence to evaluate the merits of the claim....
To succeed on an ineffective assistance of counsel claim, a defendant must establish two criteria: (i) that his trial counsel’s performance was deficient and (ii) that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). A claim of ineffective assistance may be disposed of based upon a finding that either one of the two Strickland criteria have not been established.
State v. Robinson, 11-0066, pp. 11-12 (La.App. 4 Cir. 12/7/11), 81 So.3d 90, 96-97. “Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed to the defendant by the Sixth Amendment.” Porche, 00- *853 1391 at p. 7, 780 So.2d at 1156 (citing Strickland, 466 U.S. at 686, 104 S.Ct. at 2064). “Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so 17serious as to deprive him of a fair trial.” Id. The defendant has the burden of showing that “‘there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.’ ” Id. (quoting Strickland, 466 U.S. at 693, 104 S.Ct. at 2068).
On appeal, J.T. raises four assignments of error: 1) the trial court’s failure to grant defense counsel’s motion to continue, 2) insufficiency of evidence to support a delinquency adjudication for resisting an officer, 3) excessive and illegal dispositions; and 4) ineffective assistance of counsel. We separately address each assignment.
1) Motion to continue
On the morning of trial, J.T.’s counsel requested a subpoena duces tecum be issued to obtain “any and all information regarding Officer Bissell’s trip sheets and his unit history or activity log from that specific day” (the day of J.T.’s arrest). Defense counsel contemporaneously requested a continuance to secure the missing information. J.T. contends that the trial court erred in denying the request. He emphasizes that the trial court was aware that he was on his fifth appointed counsel, who only recently was appointed. (A sixth appointed counsel came to assist the fifth appointed counsel at the adjudication hearing.) J.T. also emphasizes that the trial court acknowledged on the record that his counsel’s representation was ineffective. The trial court, J.T. contends, overstepped its discretion when it denied his request for a continuance while recognizing that he was not being adequately represented. For these reasons, he contends that the denial of the ■ continuance denied him effective assistance of counsel.
l8The State counters that the trial court did not abuse its discretion in denying the request for a continuance. The State emphasizes that at the time of the September 2011 hearing the trial had been set and continued by the defense on four separate occasions — in March, May, July, and August 2011. The State further emphasizes that at that time this juvenile case had been pending for almost six months. The State still further emphasizes that at the August 2011 hearing it complied with the defense’s earlier subpoena and provided the defense with all the information in its custody. The State thus contends that the defense had sufficient time to request further subpoenas if they needed additional information.
The decision whether to grant or to deny a motion to continue rests within the trial court’s sound discretion, and a reviewing court will not disturb such a decision absent a clear abuse of discretion. State v. Reeves, 06-2419, p. 73 (La.5/5/09), 11 So.3d 1031, 1078-79, cert, denied, — U.S. -, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009); State v. Castleberry, 98-1388 (La.4/13/99), 758 So.2d 749, 755. The jurisprudence generally has “decline[d] to reverse a conviction even on a showing of an improper denial of a motion for a continuance absent a showing of specific prejudice.” State v. Blank, 04-0204, p. 9 (La.4/11/07), 955 So.2d 90, 140 (citing State v. Champion, 412 So.2d 1048, 1051 (La.1982)); see also State v. Randle, 98-1670, p. 8 (La.App. 4 Cir. 12/22/99), 750 So.2d 353, 358 (noting that “[t]he decision turns on the circumstances of each case and should not be disturbed absent a showing of specific prejudice.”)
“When a motion to continue is based upon a claim of inadequate time to prepare a defense, the specific prejudice requirement has been disregarded only when the *854 time has been ‘so minimal as to call into question the basic fairness of the-proceeding.’ ” State v. Porche, 00-1391, p. 6 (La.App. 4 Cir. 2/14/01), 780 So.2d 1152, 1156 (quoting State v. Jones, 395 So.2d 751, 753 (La.1981)). “The reasonableness of discretion issue turns upon the circumstances of the particular case.” Porche, supra (citing State v. Simpson, 403 So.2d 1214 (La.1981)).
Pursuant to La. Ch.C. art. 877,[5] when a juvenile is not continued in custody an adjudication hearing is required to be commenced within ninety days of the juvenile’s appearance to answer the petition absent a showing of good cause to extend the period. The delinquency petition against J.T. was filed on March 2, 2011; J.T. pled not guilty two days later. Although J.T. was initially continued in custody, he was released following a hearing on March 30, 2011. In compliance with Article 877, the trial court at the July 2011 hearing made a determination of good cause and extended the period to August 2011. In so doing, the trial court cautioned the parties that this would be the final continuance, stating:
Someone suddenly left the Office of JRS [Juvenile Regional Services] to pursue a new job and Ms. Ward has just inherited this file. So there were some documents that she needed in order to be prepared for Trial this morning, which has now turned into this afternoon that she does not currently have in her possession. So everybody is clear that this is the last setting. So whatever discovery you — all need, whatever information you need from the city or what not you’ve got two weeks to have that information on hand and we’re going to set this matter for trial again.
At the August 2011 hearing, defense counsel failed to appear and was held in contempt. The matter was reset for September 2011.
|1(>At the September 2011 hearing, J.T. was represented by two new JRS counsel, who made their first appearances on the record in the case. As noted, J.T.’s counsel requested a subpoena duces tecum for the unit history and a continuance to obtain that missing information. The motion was prompted by J.T.’s counsel’s discovery that morning when interviewing the NOPD communications officer, Ms. Varise, that she could not confirm whether or not a suspicious person dispatch call was made. J.T.’s counsel informed the trial court that in interviewing Ms. Varise it came to defense counsel’s attention that there was a possibility that additional information could be obtained by subpoenaing the police officer’s unit history for the day of the arrest. When questioned by the trial court, defense counsel agreed that the defense could have learned of this missing information earlier.
Denying both requests, the trial court reasoned that it was doing so “with the understanding that all of the previous continuances have been requested by the Defense and the Defense has acknowledged it’s [sic] ineffectiveness in their representation of [J.T.].” The court also stressed that the information the defense was seeking was information that the defense could have gathered in the time that had *855 elapsed. The court still further stressed the State’s representation that it had turned over to the defense all the information it had in its possession.
In support of his contention that the trial court’s denial of his motion to continue deprived him of effective assistance of counsel J.T. cites State v. Addison, 94-2745 (La.6/23/95), 657 So.2d 974, and State v. Laugand, 99-1124, 99-1327 (La.3/17/00), 759 So.2d 34. Summarizing this line of jurisprudence, this court in State v. Johnson, 04-0178, pp. 10-11 (La.App. 4 Cir. 12/8/04), 892 So.2d 28, 34-35, noted:
Inin State v. Laugand, 99-1124 (La.3/17/00), 759 So.2d 34, the Louisiana Supreme Court in a per curiam opinion, reversed the defendant’s conviction because the trial judge erroneously denied a motion to continue on the basis that counsel was unprepared. The court noted that counsel participated in the trial, including cross-examining the State’s witnesses and arguing the case to the jurors at the close of evidence. However, the court found that the trial court committed reversible error in its denial of the motion to continue because the record showed that defendant’s counsel had not prepared and the trial court had to intervene to stop defendant’s counsel from pursuing matters directly adverse to the defendant’s interests. The court further found that defendant’s counsel had failed to complete other tasks essential to the defendant’s case.
In State v. Addison, 94-2745 (La.6/23/95), 657 So.2d 974, the defendant had been represented by various attorneys from the public defender’s office, and on the morning of trial, the attorney who had represented the defendant only at a bail reduction hearing appeared and moved for a continuance. The trial court denied the continuance and noted that different public defenders had been substituting in and out of the case. The court of appeal refused to consider the denial of the continuance on the grounds that the attorney failed to state specific grounds for the continuance. The Supreme Court granted cer-tiorari to consider the issue of whether the trial judge vented her frustration with the public defender’s office by forcing the defendant to trial despite the last minute substitution of an attorney who was not familiar with the case. In another per curium decision, the court found that the record did not establish ineffective assistance and prejudice, but found that a showing by the defendant at a subsequent hearing that his new attorney was totally unprepared might entitle him to a new trial.
This line of jurisprudence is based on the principle that “forcing an unprepared attorney to go forward with trial punishes the defendant, who is unable to present an adequate defense, not the attorney.” Porche, 00-1391 at pp. 7-8, 780 So.2d at 1156. Based on this line of jurisprudence, “when the preparation time is ‘unreasonably short,’ counsel has been ‘diligent’ and a ‘general allegation’ of prejudice has been made, a denial of a continuance would be reversible error.” Schlosser, La.Crim.Trial Prac. (4th ed.), § 17:6. As explained below, J.T.’s reliance on this line of jurisprudence is misplaced.
| i2This line of jurisprudence (particularly the Laugand case) was distinguished by this court in the Porche case. In Porche, on the morning of the first day of trial defense counsel filed a motion to continue based on his representation that he had just heard the 911 tape, which he was unaware existed, and that he had just received a copy of a transcript from a motion hearing. The prosecutor responded that the 911 tape had been available in the property room for several months and that the dispatcher’s notes, which had been given to the defense, indicated that a 911 call *856 was made. As to the transcript, defense counsel acknowledged that the court reporter had offered to fax the transcript to him on the Friday before the Monday trial date. In addressing the issue of whether the trial court’s denial of the continuance resulted in an ineffective assistance of counsel, this court noted that “defense counsel’s failure is not the issue, but rather did the lack of the transcript cause the appellant to receive inadequate representation.” Porche, 00-1891 at p. 9, 780 So.2d at 1157. Answering that question in the negative, this court contrasted the facts in the case before it to those in Laugand, stating:
In Laugand, the court noted instances in the transcript which indicated that defense counsel’s general lack of preparation affected the appellant’s ability to present an adequate defense. In the instant case, the appellant does not argue that counsel was generally unprepared for trial. Rather, he argues that counsel was unprepared due to his failure to timely receive a particular transcript and the 911 tape.
The subject transcript was limited to the admission of the identification, which the appellant does not assign as error. Despite hearing the 911 tape for the first time on the day of trial, defense counsel competently cross-examined the victim relative to discrepancies between her statements on the tape and her trial testimony.
Porche, 00-1391 at p. 10, 780 So.2d at 1157-58. This court thus found that the denial of the motion to continue did not result in an ineffective assistance of counsel.
| i3The factual scenario presented in this case is analogous to the one presented in the Porche case. J.T. was represented at trial by two JRS attorneys. J.T.’s counsel requested a continuance neither because they were newly appointed to the case nor because they generally were unprepared to try the case. Rather, they requested a continuance because they wanted to obtain missing information — the unit history for Officer Bissell’s police unit. The relevance of the missing information was to establish J.T.’s counsel’s theory that there was no actual dispatch call, but rather Officer Bissell simply made up the dispatch call. J.T.’s counsel’s position was that they did not know whether there was a 911 call or a dispatch tape related to the item number associated with J.T.’s arrest that was under a different item number, which the State has not turned over to them. However, J.T.’s counsel acknowledged that there was no guarantee that any missing information could be produced if another subpoena was issued to the State. J.T.’s counsel conceded that there was only a possibility that the missing information existed; his counsel stated: “Maybe more stuff exists out there maybe it doesn’t.” His counsel further stated that “it seems that there may be additional information that we have not been provided [by the State] and that it may or may not exist.”
Although on the morning of trial J.T.’s counsel filed a motion to continue and a subpoena duces tecum, his counsel made an appearance at the beginning of the adjudication hearing and, like the State, declared on the record that the “Defense is also readjf’ to proceed to trial. During the adjudication hearing, defense counsel thoroughly cross-examined the State’s witness, Officer Bissell, on the issue of whether there was an actual suspicious person dispatch call. Officer Bissell answered affirmatively. Defense counsel also questioned the NOPD | ^communications officer, Ms. Varise, regarding the lack of any evidence of a suspicious person dispatch call. As the State points out, Ms. Varise could not verify whether there was or was not such a dispatch call. She could only verify that *857 the incident recall associated with the item number for J.T.’s arrest did not reflect that a suspicious person dispatch call was made.
Given the circumstances presented in this case, the trial court did not abuse its vast discretion in denying the defense’s fifth motion to continue this juvenile case that had been pending for six months. The mere possibility of the existence of missing evidence was not good cause for issuing yet another extension of the adjudication hearing date under La. Ch.C. art. 877.
As J.T. points out, both defense counsel and the trial court recognized that defense counsel was ineffective; and defense counsel accepted responsibility for failing to investigate the matter — to interview the NOPD communications officer— before the trial date. However, to establish an ineffective assistance claim a defendant must show both elements: (i) that his trial counsel’s performance was deficient and (ii) that the deficiency prejudiced him. Strickland, swpra. J.T. has not shown, and the record does not support, that he was prejudiced by the trial court’s denial of the motion to continue. Thus, we cannot conclude that J.T. was denied effective assistance of counsel as a result of the denial of the continuance. This assignment of error lacks merit.
2) Resisting an officer adjudication
The gist of J.T.’s next contention is that the State failed to present sufficient evidence to adjudicate him delinquent for the offense of resisting an officer. The petition, as J.T. points out, charges that J.T. violated La. R.S. 14:108, resisting an officer, by “intentionally interfering with, opposing, resisting or obstructing 11B Officer Bryan Bissell acting in his official capacity and authorized by law to make a lawful arrest when the offender knew or had reason to know that the person arresting was acting in his official capacity.”
The two pertinent statutory provisions are as follows:
La.C.Cr.P. art. 215.1 provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. La. R.S. 14:108 provides:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase “obstruction of’ as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest....
J.T. contends that the trial court erred in adjudicating him delinquent for resisting an officer given that the record does not reflect that he was notified of an arrest or a detention before his flight from the officer and given that there was no probable cause for an arrest or reasonable suspicion for a detention. As the State points out, J.T.’s contention regarding the sufficiency of the evidence to support the resisting an officer adjudication has two components. First, he contends that Officer Bissell lacked reasonable suspicion to conduct an investigatory Terry stop[6]11fiunder *858 La.C.Cr.P. art. 215.1, and thus the detention was unlawful. Second, he contends that an essential requirement to establish a resisting an officer offense is that the defendant be notified that he is under arrest or detention. We separately address each component.

a. Reasonable suspicion

J.T. contends that there was no lawful detention because other than receiving an alleged dispatch call providing a “vague description” of someone selling drugs in the area, Officer Bissell had no grounds to arrest or to detain him. Officer Bissell neither saw him do anything criminal nor had any specific information regarding any criminal activity by him. J.T. thus contends that he had the right to avoid the officer. In support, J.T. cites jurisprudence standing for the proposition that a person has the right to “resist” an unlawful detention by flight. State v. Manuel, 06-0486 (La.App. 4 Cir. 11/21/06), 946 So.2d 245 (discussing the 2006 amendment to La. R.S. 14:108, which added “lawful detention” to the statute and permits a person to resist an unlawful detention).
The State counters that when Officer Bissell encountered J.T. he had reasonable suspicion to detain him, ie., to conduct an investigatory stop under La.C.Cr.P. art. 215.1. The State points out that J.T. fit the general description given by the dispatch of the suspicious person and that J.T. was sitting on the porch of an obviously blighted building. Because J.T. obstructed the officer’s clear directive and fled, J.T.’s flight constituted resisting an officer by obstructing a lawful detention.
Although J.T. disputes the existence of an actual dispatch call, Officer Bissell testified that he received such a dispatch call. When a “description of the perpetrator of the offense ... has been broadcast, the officer is usually justified in |17detaining anyone who fits that description found within the area.” Schlosser, La.Crim. Trial Prac. (4th Ed.), § 3:2. Another factor supporting a finding of reasonable suspicion is that J.T. was on obviously abandoned (blighted) property. Moreover, Officer Bissell was aware that J.T. was on probation for a prior offense. Taken together, these factors support a finding of reasonable suspicion.

b. Notification of arrest or detention

The second component of J.T.’s argument is his contention that flight from an officer, albeit suspicious, does not become a criminal offense until the suspect is notified that he is under arrest or being detained. J.T. points out several facts that he contends establish that he was not given notice; to wit: Officer Bissell never told him he was under arrest or being detained; Officer Bissell was still seated in the police unit when he summoned him; and Officer Bissell could not recall if his lights or siren were activated. Based on these facts, J.T. contends that the record does not reflect he was notified of an arrest or a detention before he fled from Officer Bissell.
The State counters that there is no magic language required to establish an arrest or a detention. The State points out that the circumstances presented in this case indicate that Officer Bissell was conducting a valid detention. Officer Bissell — acting in his official capacity as an officer on duty, riding in a marked police unit, and wearing a police uniform — expressly instructed J.T. to approach the police unit. Given these circumstances, the State submits that not only was it apparent that Officer Bissell was conducting an investigatory stop, but also that J.T. understood the officer’s intent to do so. Stated otherwise, the State contends that “the unambiguous directive by a uniformed law enforcement officer to come 1 isto him, within the circumstances of *859 this case is in fact an investigatory detention.” We agree.
Although there is no requirement that the defendant be given any particular type of notice, an essential element to a conviction under R.S. 14:108 is “the defendant’s knowledge of his arrest or impending detention.” State v. Knowles, 40,324, p. 19 (La.App. 2 Cir. 12/30/05), 917 So.2d 1262, 1273 (citing State v. Nix, 406 So.2d 1355 (La.1981); State v. Hines, 465 So.2d 958 (La.App. 2 Cir.1985)). Both Officer Bis-sell’s testimony and J.T.’s actions support a factual finding that J.T. had knowledge of the detention. Officer Bissell’s testified that he requested J.T. to come over to the police unit. J.T. made eye contact with Officer Bissell and immediately attempted to escape.
In sum, Officer Bissell was acting in his official capacity and had reasonable suspicion at the time he requested that J.T. approach the police unit. It follows that J.T.’s detention was lawful and that his flight was an obstruction in violation of La. R.S. 14:108, resisting an officer. This assignment of error thus lacks merit.[7]
3) Excessive and illegal dispositions
J.T. contends that the trial court erred in imposing patently illegal and excessive dispositions. As noted, the trial court imposed a disposition of one year as to the illegal possession of handgun by a juvenile adjudication, La. R.S. 14:95.8, and six months as to the resisting an officer adjudication, La. R.S. 14:108. J.T.’s argument that the dispositions are excessive and illegal has two components; he alleges that the trial court erred in (i) imposing an illegal sentence as to the | ^possession of a handgun by a juvenile adjudication, and (ii) improperly imposing consecutive sentences for two misdemeanor offenses charged in the same petition.

(1) illegal disposition for possession of handgun by a juvenile adjudication

The disposition for illegal possession of a handgun by a juvenile of one year is an illegal disposition.[8] The pertinent statutory provision is La. R.S. 14:95.8, which provides:
A. It is unlawful for any person who has not attained the age of seventeen years knowingly to possess any handgun on his person. Any person possessing any handgun in violation of this Section commits the offense of illegal possession of a handgun by a juvenile.
B. (1) On a first conviction, the offender shall be fined not more than one hundred dollars and imprisoned for not less than ninety days and not more than six months.
(2) On a second conviction, the offender shall be fined not more than five hundred dollars and imprisoned with or without hard labor for not more than two years.
(3) On a third or subsequent conviction, the offender shall be fined not more than one thousand dollars and imprisoned at hard labor for not more than five years.
(4) A juvenile adjudicated delinquent under this Section, having been previously found guilty or adjudicated delinquent for any crime of violence as defined by R.S. 14:2(B), or attempt or *860 conspiracy to commit any such offense, shall upon a'first or subsequent conviction be fined not less than five hundred dollars and not more than one thousand dollars and shall be imprisoned with or without hard labor for not less than six months and not more than five years. At least ninety days shall be served without benefit of probation, parole, or suspension of sentence.
La. R.S. 14:95.8. The petition does not allege any previous adjudications of delinquency for a crime of violence. There are no facts of record to support the trial court’s apparent imposition of a sentence for a second offender. The 12nmaximum disposition that the trial court could impose for this adjudication as a first offender was six months. The one-year disposition for this offense is illegally excessive.

(ii) improper consecutive sentences

Although in the initial judgment both dispositions were made to run concurrent with each other, the trial court issued a supplemental and amending judgment, changing the dispositions on the two counts at issue from running concurrently to consecutively, resulting in an eighteen month sentence. The trial court’s imposition of consecutive dispositions for two misdemeanor offenses charged in the same petition is contrary to the Louisiana Supreme Court’s holding in State in the Interest of B.J., 05-0913 (La.6/24/05), 906 So.2d 392. In that case, the Supreme Court amended the juvenile court’s disposition to provide for concurrent, not consecutive, terms of six months. In capping the total disposition that could be imposed at six months, the Supreme Court reasoned:
Under the authority of La.C.Cr.P. art. 883, a trial judge in the case of misdemeanor offenses arising out of the same transaction and charged in the same bill of information may impose consecutive sentences, just as the court may in any other case, felony or misdemeanor, but La.C.Cr.P. art. 493.1 specifically limits the defendant’s overall sentencing exposure in the particular circumstance of, joined misdemeanor offenses to a total of six months in jail.
Our decision in State in the Interest of D.J.[, 01-2149 (La.5/14/02), 817 So.2d 26] buttresses a determination here that courts should accord identical treatment to juvenile as well as adult offenders under the circumstances of the present case.... We are therefore particularly reluctant to endorse any rule by which a juvenile offender may serve more time in the custody of the state than would an adult offender under similar circumstances because that result does not further the strong commitment of Louisiana to the rehabilitation of juvenile offenders.
12)05-0913 at pp. 3-4, 906 So.2d at 394. Accordingly, the Supreme Court vacated the disposition order and amended it to provide for concurrent, not consecutive, dispositions.
Based on the Supreme Court’s holding in Interest of B.J., we find the trial court erred in ordering the dispositions to run consecutively, as opposed to concurrently. Because this case involves two misdemean- or offenses that were charged in the same petition and tried together, the total sentence imposed cannot exceed six months. Interest of B.J., supra. Accordingly, we vacate the dispositions and remand with instructions that the trial court impose dispositions consistent with principles stated in this opinion.[9]
*861 4) Ineffective assistance of counsel
In his final assignment of error, J.T. contends that he was denied effective assistance of counsel because his counsel failed to file “even the most basic pleadings” in his defense. In particular, he points out that his counsel failed to file the following three pleadings: (i) motion to suppress the evidence (the pistol); (ii) post-adjudication motion for new trial challenging the sufficiency of the evidence; and (iii) post-disposition motion challenging the excessiveness and illegality of his dispositions. None of these contentions has merit.[10]

a. Motion to suppress

J.T. contends that his counsel failed to file a motion to suppress the handgun that Officer Bissell testified J.T. abandoned. J.T. contends that because Officer l22Bissell did not possess reasonable suspicion to detain him, the seizure of the abandoned handgun was illegal. In support, he cites State v. Edwards, 530 So.2d 97 (La.App. 4th Cir.1988).
The State counters that because J.T. failed to appeal the sufficiency of the evidence of the possession of a handgun by a juvenile adjudication, this issue is not properly before us on appeal. Regardless, the State contends that if a motion to suppress had been filed, it would have been denied. In support, the State cites State v. Tucker, 626 So.2d 707 (La.1993), opinion reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993), for the proposition that when a suspect flees from an officer under circumstances under which his actual detention is not “virtually certain” to occur,[11] any items discarded (abandoned) can be used as evidence. Continuing, the State contends that since J.T.’s detention was not “virtually certain” to occur (indeed, he escaped), J.T. cannot establish prejudice as a result of his counsel’s failure to file a motion to suppress. We agree.
A similar issue was presented in State in Interest of P.L., 11-1173 (La.App. 4 Cir. 1/11/12), 81 So.3d 983. In that case, the juvenile, like J.T., abandoned a handgun while running from the police after being ordered by the officers to come to where the officers were located. The juvenile was adjudicated delinquent for possession of a handgun by a juvenile and for resisting an officer. On appeal, the juvenile contended that the trial court erred in denying his motion to suppress the handgun. This court found that “there was no unlawful intrusion into P.L.’s right | Mto be free from governmental interference.” State in Interest of P.L., 11-1173 at p. 10, 81 So.3d at 989. We found that the officers had reasonable suspicion to conduct an investigatory stop. We further found that for this reason when the juvenile abandoned the handgun the officers had the right to seize it.
*862 By analogy, given (as we determined earlier in this opinion) that Officer Bissell had reasonable suspicion to detain J.T., when J.T. abandoned the handgun Officer Bissell had the right to seize it.[12]

b. Motion for new trial

J.T. contends that defense counsel was ineffective for failing to challenge by post-adjudication motion for new trial the sufficiency of the evidence to support his delinquency adjudications. However, he cites no authority for the proposition that such a motion was required. The State counters that this contention lacks merit because there is no support for the suggestion that filing a motion for new trial is a prerequisite to raising a sufficiency of the evidence issue on appeal. We agree. Defense counsel’s failure to file a motion for new trial had no effect on J.T.’s ability to raise on appeal the sufficiency of the evidence of the delinquency adjudications. Indeed, J.T. raised on appeal the sufficiency of the evidence to support his resisting an officer adjudication.
124c. Post-disposition motion
J.T. contends that defense counsel was ineffective for failing to file post-disposition motions challenging the validity and excessiveness of the dispositions. The State counters that pursuant to La.C.Cr.P. arts. 882 and 920, which are made applicable to juvenile proceedings by La. Ch.C art. 104(1), an illegal sentence is an error patent that can be considered on appeal without regard to whether a contemporaneous objection was made. The State thus submits that J.T. has failed to demonstrate any prejudice. We agree. Indeed, J.T. successfully raised on this appeal the issue of the illegality of the dispositions imposed on him.
In sum, none of the contentions J.T. raises regarding ineffective assistance of counsel is persuasive. This assignment of error lacks merit.

DECREE

For the forgoing reasons, the juvenile’s delinquency adjudications are affirmed, his dispositions are vacated, and this matter is remanded to the trial court for a new disposition hearing.
ADJUDICATION OF DELINQUENCY AFFIRMED; DISPOSITION VACATED; CASE REMANDED WITH INSTRUCTIONS

.Pursuant to the requirements of confidentiality of juvenile proceedings as set forth in La. Ch.C. art. 412, the juvenile, who was sixteen at the time of the charged offenses, is referred to by his initials only, J.T.

. Although in the petition the arresting officer's name is spelled "Bryan,” in the transcript it is spelled "Brian.”

. Officer Bissell testified that he had been involved in two prior arrests of J.T.

. Although defense counsel on the morning of trial requested a subpoena duces tecum be issued to obtain Officer Bissell's unit history from the day of J.T.’s arrest, the trial court denied that request and the related request for a continuance.

. La. Ch.C. art. 877 provides:
A. If the child is continued in custody pursuant to Chapter 5 of this Title, the adjudication hearing shall commence within thirty days of the appearance to answer the petition.
B. If the child is not continued in custody, the adjudication hearing shall commence within ninety days of the appearance to answer the petition.
C. If the hearing has not been commenced timely, upon motion of the child, the court shall release a child continued in custody and shall dismiss the petition.
D. For good cause, the court may extend such period.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. For similar reasons, we find, as discussed elsewhere, no merit to J.T.'s contention that his counsel’s failure to file a motion to suppress the pistol constituted ineffective assistance of counsel.

. The disposition for resisting an officer of six months, by itself, is not an illegal disposition; La. R.S. 14:108 C provides that ''[w]hoever commits the crime of resisting an officer shall be fined not more than five hundred dollars or be imprisoned for not more than, six months, or both.”

. Both the original and supplemental disposition impose a fee (court costs) of $55; whereas, the transcript imposes a fee of $90. Since we vacate the dispositions we find it unnecessary to resolve this inconsistency. Rather, we note it for the trial court, to resolve on remand.

. His argument regarding ineffective assistance of counsel in relation to the motion continue is addressed elsewhere in this opinion. Likewise, the standards for addressing an ineffective assistance of counsel are set forth elsewhere in this opinion.

. The determination of whether an actual stop is imminent is "ascertained by examining the extent of police force employed in attempting the stop.” Tucker, 626 So.2d at 712. The following factors are considered in assessing the degree of force the police used and determining whether that force was virtually certain to result in an "actual stop”: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Tucker, 626 So.2d at 712-713.

. J.T.'s reliance on Edwards, supra, is misplaced. In Edwards, supra, officers were on patrol in an area known for narcotics activity when they saw the defendant and a companion standing on a corner. The defendant was showing his companion an object clenched in his hand. The defendant fled as the officers approached. The officers pursued him, and as he entered a sweetshop, they saw him remove a gun from his waistband and place it under a door. On review from the granting of the motion to suppress evidence, this Court found the officers’ actions would have caused a reasonable person to believe he was seized, and because the officers did not possess reasonable suspicion of criminal activity, they were without authority to seize the discarded object. However, it was later recognized by this court in State v. Anderson, 96-0810 (La.App. 4 Cir. 5/21/97), 696 So.2d 105, that the portion of the Edwards decision which found that the defendant was "seized” when the police followed him into the store "may have been overruled by California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), as interpreted by and applied in State v. Tucker, 626 So.2d 707 (La.1993), opinion reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993).” Anderson, 96-0810 at p. 3, n. 2, 696 So.2d at 106. As the State points out, under Tucker there was no seizure unless J.T.'s detention was virtually certain to occur, which was not the case.